830 F.2d 194
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lethodia Otis FULTON, Defendant-Appellant.
 No. 86-3445
 United States Court of Appeals, Sixth Circuit.
 September 30, 1987.
 
 Before BOYCE F. MARTIN, NATHANIEL R. JONES and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Lethodia Otis Fulton appeals from the judgment entered on his jury conviction for possession of a firearm by a convicted felon. 18 U.S.C. App. Sec. 1202(a)(1) (1982). Defendant contends on appeal that his conviction resulted from the admission of evidence obtained through an illegal search and seizure. We find no merit in this contention and affirm the judgment of conviction.
 
 
 2
 On October 4, 1985, at about 10:45 a.m., Cincinnati Police Specialist George Rudemiller was on duty in plain clothes, seated on the passenger side of an unmarked vehicle parked on 12th Street in Cincinnati. Fulton and a companion approached the unmarked vehicle and Fulton asked Rudemiller if he wanted to purchase a TV set which Fulton said had just been 'ripped off.' Rudemiller said that he might wish to do so. Both Fulton and his companion asked if they could get into the vehicle, Fulton in front and his companion in back. Rudemiller allowed only Fulton to enter the vehicle. While his companion remained on the sidewalk next to the vehicle, Fulton got into the front seat and repeated his offer to sell the TV set. When Rudemiller asked Fulton how much he wanted for the TV set, Fulton replied '$50.00.' Rudemiller asked Fulton to bring the TV to him so that he could take a look at it. Fulton replied that he would have to take Rudemiller to a vacant building down the street to look at the TV. Rudemiller, fearing that Fulton and his companion intended to rob him, refused to go alone to the vacant building with the two men. Rudemiller told them that he was waiting for someone and that when that person arrived, the two of them would go to see the TV set.
 
 
 3
 At this point, Rudemiller's partner, Officer Glenn Cox, also in plain clothes, approached the unmarked vehicle. Upon seeing Cox, Fulton's companion told Fulton that a 'cop' was coming down the street and that Rudemiller was a police officer as well. Upon hearing this, Fulton got out of the vehicle and started walking eastbound on 12th Street with his companion. Rudemiller also got out of the vehicle and motioned to Cox to stop the two men. Rudemiller approached Fulton and identified himself as a police officer. Fulton continued walking down the street. Rudemiller then grabbed Fulton's left arm, asked for some identification, and repeated that he was a police officer. At this point, Fulton reached under his shirt with his right hand in a threatening manner. Cox responded by taking hold of Fulton's right arm. As he did so, he felt Fulton's right hand on the handle of a revolver, and yelled to Rudemiller that Fulton had a gun. The officers then frisked Fulton and removed a loaded revolver that was tucked into his belt on his right side and arrested him for carrying a concealed weapon. Prior to this arrest, Fulton had been convicted twice of robbery and once of burglary.
 
 
 4
 Fulton was subsequently indicted and convicted by a jury in federal district court of possessing a firearm while under disability as a result of a prior felony conviction in violation of 18 U.S.C. App. Sec. 1202(a)(1). Prior to the trial, a hearing was held on Fulton's motion to suppress the handgun which had been seized at the time of his arrest. The motion was denied and the handgun was admitted into evidence. Fulton now appeals from his conviction, alleging that the conviction is based upon the fruits of an illegal seizure and search.
 
 
 5
 On appeal Fulton argues that the district court erred in not suppressing the handgun because the weapon was obtained as a result of an illegal detention and search. The standard of review applied on appellate review of a district court's finding on whether an illegal seizure has occurred is the clearly erroneous test. United States v. Morgan, 743 F.2d 1158, 1162 (6th Cir. 1984), cert. denied, 471 U.S. 1061 (1985). In Terry v. Ohio, 392 U.S. 1 (1968), the United States Supreme Court held that a police officer must be able to articulate specific facts and inferences that lead to a reasonable suspicion of criminal activity in order to justify an investigatory stop. Id. at 21. The court further stated that after a lawful investigative stop, a police officer may frisk a person for weapons if the officer has a reasonable belief that the person is armed and presently dangerous. Id. at 30. The admissibility of the evidence obtained from such a stop and frisk turns on whether, in light of the 'totality of the circumstances' surrounding the seizure, it was reasonable for the police officer to proceed as he did. United States v. Cortez, 449 U.S. 411, 417 (1981).
 
 
 6
 The first question to be considered is whether the investigatory stop was proper. According to Officers Rudemiller and Cox, the following facts were relevant to the formation of their suspicions regarding Fulton: (1) Fulton and his companion approached Rudemiller while he was sitting in his car and offered to sell him stolen property; (2) Fulton attempted to have Rudemiller go alone with him and his companion to a vacant building to carry out the transaction; (3) Fulton's companion, upon seeing Officer Cox, alerted Fulton that Cox and Rudemiller were police officers; and (4) immediately upon being warned that Cox and Rudemiller were police officers, Fulton left the car and attempted to flee.
 
 
 7
 Based on these facts, the officers inferred that Fulton was either engaged in the sale of stolen property, or that he was using the offer to sell stolen property to lure Rudemiller to an isolated location where Fulton and his companion could rob him. The officers clearly succeeded in articulating specific facts and inferences that led to a reasonable suspicion that Fulton was engaged in criminal activity. Therefore, the investigatory stop was justified.
 
 
 8
 Having found that the stop was justified, the next issue is whether the officers had sufficient cause to frisk Fulton. A police officer may not frisk an individual after an investigatory stop unless the officer has a reasonable belief that the individual is armed and presently dangerous. Terry, 392 U.S. at 30. As further explained by the Supreme Court:
 
 
 9
 [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.
 
 
 10
 Id. According to the officers, the following factors led them to believe that Fulton was potentially dangerous: 1) After the officers identified themselves, and sought to stop and question Fulton, he failed to stop as requested and kept walking; and (2) Upon being stopped, Fulton made a gesture with his right hand and reached under his shirt as if to get a concealed weapon.
 
 
 11
 Under these circumstances the officers acted reasonably in frisking Fulton. Fulton's attempt to reach into his clothes clearly signalled a threat. The officers certainly had adequate reason for believing that he posed a threat to them. They acted reasonably in all respects. Their seizure and search of Fulton was fully justified and constitutionally sound. The district court therefore did not err in refusing to suppress the handgun.
 
 
 12
 Accordingly, the judgment of conviction is AFFIRMED.